24 C.C.P.A.(Patents)

## In re BEST.

### Patent Appeal No. 3678.

Court of Customs and Patent Appeals.
Feb. 1, 1937.

Martin T. Fisher, of Washington, D. C. (John M. Cole, of New York City, of counsel), for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the action of the Primary Examiner in rejecting claims 8, and 10 to 15, inclusive, of said application. The references relied upon by the examiner were as follows:

Schmidt, 1,564,026, December 1, 1925.
Stuart, 977,981, December 6, 1910.
Baldwin, 905,781, December 1, 1908.
Bossart, 1,702,428, February 19, 1929.
Alabaster, 314,306, March 24, 1885.
Field, 233,493, October 19, 1880.
Hale, 254,642, March 7, 1882.
Garrett, 942,897, December 14, 1909.
British Pat., 257,599, August 18, 1926.
British Pat., 291,521, June 5, 1928.

Claim 10 was rejected by him as unpatentable over either Schmidt or Bossart. Claim 8 was rejected on Bossart. Claims 8 and 10 were additionally rejected on Stuart. Claim 11 was rejected on Schmidt or Bossart, in view of Baldwin or Stuart. Claims 12 to 14, inclusive, were rejected as unpatentable over any one of Schmidt, Bossart, Field, Hale, Garrett, Alabaster, British patent 257,599, or British patent 291,521. Claim 15 was rejected on Schmidt or Bossart.

The Board of Appeals affirmed the examiner in these rejections, and added an additional reason for rejection as to claim 11, being of opinion that this claim was indefinite and functional. In its discussion of the subject-matter of the rejected claims, the Board of Appeals stressed particularly the British patent 257,599, to De Cairos-Rego.

The rejected claims are illustrated by claims 8, 11, and 12, which are as follows:

"8. The method of producing sound from electric currents of audible frequency, which consists in superimposing on a saturated magnetic field a varying field corresponding with the variations of the electric current, causing the flux of both fields to pass through an armature rigidly supported to be incapable of free vibration to thereby produce superimposed vibrations in the armature and its' support, and transmitting said vibrations to a sonorous body which reflexes the vibratory waves back to the armature and its support to amplify the same and produce sound."

"11. A device for the electromagnetic production of waves comprising a stationary magnet system having four fixed poles, powerful magnetizing coils for making two of said poles North and the other two South, a soft iron armature spaced from each of the four poles by four narrow air gaps, coils wound about each of the four poles and connected together, and a fixed non-yielding support for the armature, the support effecting wave amplification by internal reflection of the wave without bodily movement."

"12. The method of causing a varying electric current to produce sound, which consists in causing said varying current to

produce a varying magnetic field, causing said magnetic field to affect the material of a permeable rigid armature carried on a fixed non-permeable support so as to be substantially stationary, to produce waves in said permeable material corresponding to the variations in the current, building up the amplitude of said waves by reflexing them in the support, and transmitting said built up waves to a resonator which reflexes the vibratory waves back to the armature and support to amplify the same and produce sound."

All the claims are for a method, except said claim 11.

The Board of Appeals thus describes appellant's apparatus and its operation: "The claims on appeal are directed to a loud-speaker actuating unit and to the alleged method involved in the intended use of the same. Appellant's unit includes a permanent magnet of horseshoe shape designed to produce a suitable magnetic field. The two poles of this magnet are each provided with a pair of auxiliary poles. These poles are laterally offset somewhat from the poles first referred to and are of such size as to accommodate individually a coil. These coils are, as shown, connected in series parallel and are designed to be connected to the output circuit of suitable receiving or amplifying apparatus. The four auxiliary pole pieces are so mounted as to face each other with a small gap between and in this gap is disposed an elongated armature having considerable mass. This armature is of iron and is so supported intermediate its ends that it is relatively immovable. The support is a bar of considerable cross-section and this bar in turn forms a part of a mounting block which is clamped to a supporting bracket carried by the poles of the permanent magnet. It is appellant's contention that current flowing through the various coils of the system varies the magnetic field in which the armature is disposed and produces vibrations in the armature without actual bodily movement thereof."

The board, in discussing appellant's theory, was of the opinion that there was doubt as to the method of the operation of appellant's device. As to this, the board states: "Appellant's theory as to these vibrations is not entirely clear but he likens them to the vibrations set up in a bell in response to a light stroke or in a steel rail in a corresponding manner. Apparently the vibrations are set up by molecular

deformation rather than by a bodily movement of the member. Obviously, there must be some change in relative position of the parts of the member, though doubtless slight, otherwise no vibrations could be transmitted to the sonorous body with which the armature is designed to be associated. By preference, it is stated that a number of these units are associated with a single sonorous body corresponding in a general way to the sounding board of a piano."

As we understand the matter from the argument of counsel, appellant relies upon the fact that his armature is fixed and immovable, and that in this respect his method differs from the prior art. His method of producing sound from electric currents of audible frequency consists in superimposing on a saturated magnetic field a varying field corresponding with the variation of the electric current, and causing the flux of both fields to pass through an armature so rigidly supported as to be incapable of free vibration, to thereby produce superimposed vibrations in the armature and its support, and transmitting said vibrations to a sonorous body which reflexes the vibratory waves back to the armature and its support to amplify the same and produce sound.

It appears to the court, much as it did to the Board of Appeals, that there must be some change in the relative position of the parts of the armature, even though it may be molecular only, in order to transmit such vibratory waves and transmute the same into audible sound waves. The operation of the device was believed by the Primary Examiner to be "quite similar to that produced in a magneto-strictive member under the influence of a variable magnetic field."

While we are in doubt, as were the tribunals of the Patent Office, as to the exact method of operation, it is believed that substantially the same method is shown by the British patent to De Cairos-Rego, No. 257,599. De Cairos-Rego describes a method of converting electrical impulses into sound waves by means of an energizable attractor, and an armature located in the field of such attractor, which armature has "sufficient rigidity, either by itself or combined with its supports, to resist free attraction to the attractor when same is energized." By means of this fixed armature, vibration is set up in the entire instrument instead of in the armature, and this instrument, being placed upon a sounding board or table, transmits vibration to

said sounding board, and thus causes audible sound waves. These waves are caused, as stated by the patent, by molecular vibrations which are conveyed to the sonorous surface "and result in audibleness by a reproduction of the sounds which initiated the electrical impulses reaching the instrument."

Counsel for appellant calls attention to the fact that the De Cairos-Rego apparatus and the apparatus of appellant differ in structure, and that in the patent there is a compressible washer 13, which it is said will permit movement between the poles of the magnet and the armature. However much difference there may be of structure between the British patent and the application here, structure is not in question except in rejected claim 11, which will be hereinafter referred to. If the same method is followed out in both the British patent and in the method claims of appellant, a change in structure alone will not impart patentability to appellant's method claims.

The doubt which the Patent Office tribunals expressed as to the scientific principles involved in appellant's method was also shared by counsel for appellant, who state, in their brief: "One cannot 'get inside' the structure and must reason by such analogies as are available. Patent Law does not require accuracy of theory; it is practical and looks to the results."

The one definite thing which the appellant discloses in his application is that he depends for his transmission of vibrations, and for the effect upon his sounding board, upon the superimposition of electrical impulses of varying character upon a magnetic field, and an armature solidly and firmly positioned, and incapable of movement. These elements are shown by the patentee, De Cairos-Rego, and whatever the reason for the resulting phenomenon is in one case, is applicable in the other.

The remaining references, as stated by the Board of Appeals in its decision, embrace devices which have an actual movement of the armature, or relate to telephones or equivalent sound producing devices in which rods of considerable length, which are surrounded by coils capable of producing a desired amount of magnetic stress in the rods which they inclose, are firmly anchored at one end and associated at the other end with suitable diaphragms which are caused to vibrate by molecular distortion.

As to the rejection of claim 11, upon the ground that it is indefinite and functional, the board stated: " * * * The claim recites powerful magnetizing coils which are not shown and additional coils wound about the four pole pieces, which are shown. The claim also refers to effecting wave amplification by internal reflection. The functional statement here involved sets forth a vague statement of theory which apparently has no sound basis in fact."

The reason for rejection given by the Board of Appeals as to said claim 11, as it seems to us, is good. As the board states, the magnetizing coils are not shown either in the specification or in the drawings. The concluding language of the claim, "the support effecting wave amplification by internal reflection of the wave without bodily movement," clearly expresses a function of the apparatus, and not any element of the device itself.

The rejection of the appealed claims seems to have been proper, and the decision of the Board of Appeals is affirmed.

Affirmed.